UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NYLA MOUJAES,

    Plaintiff,

v.

SAN FRANCISCO CITY AND COUNTY, et al.,

    Defendants.

Case No. 15-cv-03129-DMR

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 28

    Plaintiff Nyla Moujaes filed a civil rights action under 42 U.S.C. § 1983 claiming that she suffered constitutional violations committed by the City and County of San Francisco ("CCSF"), the San Francisco Police Department,[1] Officer David Wasserman, Sergeant Gary Buckner, Sergeant Flint Paul, Officer Barry,[2] and Officer Brent Dittmer (collectively the "Defendant Officers") in connection with Plaintiff's traffic stop and arrest on July 14, 2013. Defendants CCSF, Wasserman, Buckner, Paul and Dittmer (for purposes of this motion, collectively the "Defendants") now move for summary judgment. Defs.' Mot. for Summary Judgment ("MSJ") [Docket No. 28]. The court held a hearing on September 1, 2016. [Docket No. 40.] For the following reasons, Defendants' motion is **granted in part and denied in part.**

---

[1] Plaintiff named the San Francisco Police Department as a separate defendant from the City and County of San Francisco. Neither party addressed this discrepancy in the motion papers. The court notes that for purposes of § 1983, "[t]he term 'persons' encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities. . . . the term 'persons' does not encompass municipal departments." *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996). Because the Police Department is a subdivision of a local government entity, it is not a proper defendant for purposes of Plaintiff's § 1983 claims and is accordingly dismissed.

[2] Plaintiff dismissed Officer Barry without prejudice at the September 1, 2016 hearing. Sept. 1, 2016 Minute Order [Docket No. 40].

## I.  BACKGROUND

### A.  Factual Background

The facts recounted in this section are undisputed for purposes of this motion, unless otherwise noted.

Plaintiff Nyla Moujaes is a self-described masculine-presenting lesbian lawyer of Middle Eastern/Southwest Asian Descent.[3] Around 11:00 p.m. on the evening of July 14, 2013, Plaintiff was driving in a car with her Afro-Cuban girlfriend, Odalys Cuesta, when they were stopped by Wasserman and his training Officer Buckner.[4] Plaintiff and Cuesta had just departed from a taqueria in San Francisco's Mission District where they had eaten dinner.

Defendants contend that Plaintiff made an illegal left turn from northbound Mission Street onto westbound 16th Street where there was a sign prohibiting left turns. Plaintiff does not know whether there was a sign at the location prohibiting left turns or whether the turn off of Mission Street was actually legal.

Plaintiff observed a police car that pulled off to the side with a red light on top. Plaintiff pulled her car over on Valencia Street and came to a complete stop within a block of seeing the red light. She waited for about ten to fifteen seconds. After seeing no movement or signal from the police vehicle, Plaintiff reentered the traffic lane and continued driving toward the 101 Freeway. Within one to two blocks, the police vehicle got closer and the red light on top of the vehicle flashed. Plaintiff did not hear a siren or a horn. Plaintiff pulled over and came to a complete stop on the left side of the road in front of an Arco gas station near 14th and Mission.

Wasserman drew his gun and pointed it at Plaintiff as he approached the driver's side of the car and told Plaintiff to show her hands. Plaintiff rolled down her window and she put her hands up, with her left arm outside of the car. Wasserman told Plaintiff to turn the car off.[5]

---

[3] Plaintiff further states that she believes that her "appearance is that of a Latino masculine presenting person that could be taken as male." Moujaes Decl. at ¶ 22. The citation issued to Plaintiff indicated that Plaintiff was "Hispanic." *Id.*

[4] Buckner was an Officer at the time of the incident. He was subsequently promoted to Sergeant.

[5] Plaintiff recalls Wasserman telling her to turn off the car once. Moujaes Dep. 139:14-140:13. Defendants maintain that Wasserman told Plaintiff to turn off the car more than once. MSJ at 4 n.3, citing Ex. A (audiotape) at 1:26.

2

Plaintiff asked why she was being pulled over. Wasserman did not answer. Wasserman put his gun back in his holster, and then reached into the window and grabbed Plaintiff's shirt and told her to get out of the car. Plaintiff put her hand back into the car, reached for her seatbelt to undo it, and opened her door. Plaintiff testified that she brought her left hand back inside the car to open the door. Moujaes Dep. 65:3-17. In his incident report, Wasserman stated that Plaintiff released her seatbelt with her right hand and "then moved her left hand towards the center console of the car." Incident Report (CCSF-Moujaes_000004) [Docket No. 29-9 at ECF 5].

Wasserman grabbed Plaintiff again. He applied a bar arm hold by taking Plaintiff's left arm and twisting it behind her back. He pulled her directly onto the pavement on her stomach, on the street outside of her car. Plaintiff did not have a chance to stand up. As soon as she was on the ground, an officer got on top of Plaintiff and put his knee on her back and handcuffed her. Another officer, who was also behind Plaintiff, held her and also put a knee on her back. According to Plaintiff, the officer or officers had his or their knees on her back for several minutes before getting off her. Plaintiff testified that when she was being handcuffed she asked the officer to loosen the handcuffs because she was in pain.

Plaintiff lay on the street on her stomach for ten to fifteen minutes. While she was lying face down in the street, Plaintiff told the officers that she was in a lot of pain, that she thought that her shoulder was dislocated, that it really hurt, and that she needed a doctor. The officers did not respond to Plaintiff. Plaintiff heard the officers speaking among themselves while she was lying handcuffed in the street. Plaintiff testified that she heard an officer say that "it's not her, we got the wrong person." She also heard a couple of other officers talking about what they might charge her with.

After lying face down in the street for ten to fifteen minutes, some officers helped Plaintiff sit up. She waited for another fifteen to twenty minutes for the ambulance to arrive. When the ambulance arrived, the EMTs put Plaintiff on a stretcher. Plaintiff's handcuffs were released so that she could be handcuffed to the stretcher. After she was in the ambulance, she was handcuffed with her hands in front instead of behind her.

Plaintiff was taken to the emergency room at San Francisco General Hospital and treated

3

for a severe dislocation of her left shoulder.  After two hours of trying to reduce the dislocation, the doctor was able to put Plaintiff's shoulder back into its socket.

Plaintiff was not asked to submit to drug or alcohol testing at the scene of the arrest, or later in the ambulance.  At the hospital, Buckner asked Plaintiff to submit to a blood test without explaining the purpose of the test.  Plaintiff refused.

The officers cited Plaintiff for driving under the influence of alcohol,[6] resisting, delaying, or obstructing peace officer duties, and traffic violations of California Vehicle Code sections 22101(d), 24603(b), and 23152(a).  Incident Report [Docket No. 29-9 at ECF 2].  On September 3, 2013, Plaintiff appeared at the arraignment hearing for the citation.  No charges were filed against her.

### B. Procedural History

Plaintiff filed her complaint in state court on June 8, 2015.  Compl. [Docket No. 1-1].  On July 7, 2015, CCSF removed the case to federal court.  Notice of Removal [Docket No. 1]. Plaintiff alleges three claims for relief: 1) a section 1983 claim against the individual defendants for wrongful arrest, seizure of her person, and assault and battery; 2) a section 1983 claim against CCSF based on respondeat superior liability for the actions of Wasserman and Buckner in the alleged unlawful detention, arrest, and assault and battery; and 3) a section 1983 claim for municipal liability based on CCSF's customs and/or policies.

## II. LEGAL STANDARDS

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation

---

[6] In her opposition brief, Plaintiff states that earlier in the evening she had one beer at a music venue called Brick and Mortar, and that she left at 8:30 p.m. to go to the taqueria.  Plaintiff testified that she did not drink any alcoholic beverages at the taqueria.   The traffic stop occurred around 11:00 p.m.  The parties do not address the issue of Plaintiff's level of alcohol consumption for purposes of the present motion.

4

omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *Id.* at 249.

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott*, 550 U.S. at 380.

### III. ANALYSIS

#### A. Section 1983 Claims Against Defendant Officers

##### 1. Unlawful Seizure

Plaintiff brings a section 1983 claim for unlawful seizure against the Defendant Officers, presumably for the traffic stop they conducted. Defendants argue that probable cause existed for the traffic stop because Wasserman and Buckner observed Plaintiff make a left turn off of Mission Street in front of sign prohibiting left turns. In the alternative, they argue that they are entitled to qualified immunity.

"[T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000); *see also Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) ("a routine traffic stop is 'more analogous to a so-called '*Terry* stop' . . . than to a formal arrest.'" (quoting *Knowles v. Iowa*, 525 U.S. 113, 117 (1998))). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-

stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez*, 135 S. Ct. at 1614 (citations omitted). Therefore, "[b]ecause addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose." *Id.* (second alteration in original) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "[I]n a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

Defendants contend that Plaintiff made an illegal left turn at the intersection of 16th and Mission. Plaintiff does not dispute this or otherwise deny it. *See* Plaintiff's Statement of Disputed Material Facts (Opp'n at 6-9). Plaintiff testified that she does not know whether there was a sign at the location prohibiting left turns, or whether the turn was actually legal. In order to survive a motion for summary judgment, the responding party must present competent evidence that creates a genuine issue of material fact. *Anderson*, 477 U.S. at 248–52. The party against whom a summary judgment motion is brought must present evidence that, if presented at trial, would support a judgment in its favor, and testimony that a party does not recall is insufficient to present competent evidence to create a genuine issue of material fact to survive a motion for summary judgment. *Id.* at 250–51; *Fed. Election Comm'n. v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002), *as amended on denial of reh'g* (Jan. 30, 2003) (testimony such as "I don't recall," "I forgot," "I'm not entirely sure," and "I have no independent recollection" was insufficient to create a genuine issue of material fact to survive a motion for summary judgment).

Plaintiff was also cited for having a broken taillight. Buckner testified that he thought Plaintiff's car had "a taillight out or something." Plaintiff does not know whether she had a broken rear taillight at the time of the incident, but may have gotten a brake light fixed at some point after the incident. Thus, Plaintiff has failed to establish a genuine issue of material fact as to whether she was driving a car with a broken taillight.

Plaintiff argues that the traffic stop was pretextual because the officers actually believed that the car was the subject of a carjacking and that the occupants were gang members. Opp'n at 7

(citing Buckner Dep. 34:19-25 ("We were getting information it was possibly involved in carjacking. . . . For all we knew, they were gang members with guns. We didn't know.")) However, the Ninth Circuit has held that if the facts provide reasonable suspicion to justify a traffic stop, the stop is lawful even if the officer made the stop only because he wished to investigate a more serious offense. *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) (citing *Whren v. United States,* 517 U.S. 806, 812–13 (1996)). Therefore, even if the traffic stop was "pretextual" because Defendants wished to investigate a carjacking, the stop was lawful as long as Defendants had reasonable suspicion that Plaintiff had made an illegal left turn and/or was driving with a broken taillight.

As there are no genuine disputes of material fact regarding the existence of reasonable suspicion to support the traffic stop for both an illegal left turn and a broken taillight, the court grants summary judgment on Plaintiff's unlawful seizure claim.

### 2. Wrongful Arrest

The parties agree that Plaintiff was arrested. "Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981)). "Probable cause exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id.* (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). "Alternatively, this court has defined probable cause as follows: when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" *Id.* (citing *United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986)) (alteration in original). While conclusive evidence of guilt is not necessary under this standard to establish probable cause, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) (citing *Henry v. United States*, 361 U.S. 98, 101 (1959)). "Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities." *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994) (citations omitted).

"Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) (citing *McKenzie,* 738 F.2d at 1008).

Defendants argue that probable cause existed to arrest Plaintiff because she made an illegal left turn, had a broken tail light, and failed to yield. The parties disagree about which party bears the burden of establishing probable cause. Opp'n at 10; Reply at 5.

> Although the plaintiff bears the burden of proof on the issue of unlawful arrest, she can make a prima facie case simply by showing that the arrest was conducted without a valid warrant. At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant.

*Dubner v. City and County of San Francisco,* 266 F.3d 959, 965 (9th Cir. 2001) (collecting cases). "This minimal burden shifting forces the police department, which is in the better position to gather information about the arrest, to come forward with some evidence of probable cause." *Id.*

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that officer was authorized to make custodial arrest for seat belt violation, punishable only by a fine, "without balancing costs and benefits or determining whether or not [plaintiff's] arrest was in some sense necessary," where the warrantless arrest of anyone violating those provisions was explicitly allowed by Texas statute); *see also Hupp v. City of Walnut Creek*, 389 F. Supp. 2d 1229, 1232 (N.D. Cal. 2005) (granting defendants' motion for summary judgment on illegal seizure claim where the plaintiff was arrested for failing to wear a seatbelt properly).

Defendants contend that they had a basis to arrest Plaintiff for violation of California Vehicle Code sections 22101(d) (compliance with turning signs), 24603 (tail lights on vehicles) and 23152 (driving under the influence of alcohol or alcohol and drugs). The California Supreme Court has held that a custodial arrest for a fine-only offense, such as a traffic infraction, does not violate the Fourth Amendment and that compliance with state arrest procedures is not a component of the federal constitutional inquiry. *People v. McKay*, 27 Cal. 4th 601, 605 (2002)

(finding that custodial arrest for the fine-only offense of a traffic infraction for riding a bicycle in the wrong direction on a residential street did not violate the Fourth Amendment). As explained above, it is undisputed that Wasserman and Buckner observed Plaintiff committing traffic infractions by making a left turn where it was prohibited by a sign and for driving a car with a broken taillight. Although Defendants also cited Plaintiff for another violation,[7] "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Blankenhorn v. City of Orange,* 485 F.3d 463, 473 (9th Cir. 2007). *See also Magallon-Lopez*, 817 F.3d at 675 (citing *Devenpeck v. Alford,* 543 U.S. 146, 153–55 (2004) and *United States v. Ramirez,* 473 F.3d 1026, 1030–31 & n. 2 (9th Cir. 2007)) ("if the facts support probable cause to arrest for one offense, the arrest is lawful even if the officer invoked, as the basis for the arrest, a different offense as to which probable cause was lacking").

Here, the undisputed facts establish that the officers had probable cause to arrest Plaintiff for making an illegal left turn and for driving with a faulty taillight. The court therefore grants summary judgment to Defendants on Plaintiff's claim for wrongful arrest.[8]

### 3. Excessive Force

Wasserman moves for summary judgment on Plaintiff's excessive force claim. He argues that the force he used was reasonable as a matter of law. In the alternative, he argues that he is entitled to qualified immunity. Buckner, Dittmer, and Paul move for summary judgment on the grounds that they were not present when Wasserman used force on Plaintiff and therefore cannot be held liable under the Fourth Amendment for Wasserman's actions.

#### a. Reasonableness of the Use of Force

A claim of excessive force in the context of an arrest or investigatory stop implicates the Fourth Amendment right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV; *see*

---

[7] Wasserman also cited Plaintiff for driving under the influence of alcohol. Defendants do not point to any evidence of probable cause for that citation, but argue that if any objective probable cause exists, the statute an officer relies on to cite a suspect is irrelevant. *See Devenpeck v. Alford*, 543 U.S. 146, 154-55 (2004).

[8] Because the court has granted summary judgment to the Defendants on Plaintiff's claims for unlawful seizure and wrongful arrest, it need not reach the issue of qualified immunity with respect to these claims.

9

*Graham*, 490 U.S. at 394. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and internal quotation marks omitted). Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The "most important single element" is whether there is an immediate threat to safety. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc) (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). Courts also consider the "'quantum of force' used to arrest the plaintiff, the availability of alternative methods of capturing or detaining the suspect, and the plaintiff's mental and emotional state." *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (internal citations omitted).

The reasonableness inquiry in excessive force cases is an objective one: whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Force is excessive when it is greater than reasonable under the circumstances," *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002), and "the reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (internal quotations and citations omitted); *Torres v. City of Madera*, 648 F.3d 1119, 1125 (9th Cir. 2011); *Santos*, 287 F.3d at 853 ("police misconduct cases almost always turn on a jury's credibility determinations.").

Plaintiff argues that Defendants' use of force included Wasserman pointing his firearm at

Plaintiff, grabbing her arm, pulling her out of the car and onto the ground outside of the vehicle, and Wasserman and another officer putting their knees on Plaintiff's back and handcuffing her.

Defendants argue that they are entitled to summary judgment because Wasserman's use of force was objectively reasonable as a matter of law. They contend that Plaintiff was uncooperative , that she failed to yield and led the officers on a "four-block, slow speed chase," and that she failed to obey his order to turn off the car and get out, and instead reached toward the center console of her car. MSJ at 8-9; Reply at 5-7. Defendants assert that Wasserman's use of force in using a bar arm take-down to remove Plaintiff from her car and put her face down on the ground was "minimal and entirely reasonable." *Id.*

Plaintiff contends that she did not fail to yield to the instruction to pull over. She states that when she first saw the red light, she pulled over within a block and waited for ten to fifteen seconds to determine whether her vehicle was being stopped by the police. After seeing no movement or signal from the police vehicle, Plaintiff then pulled back into the traffic lane and slowly continued driving. Within one to two blocks, the police vehicle got closer and the red light on top of the vehicle flashed. Plaintiff pulled over and came to a complete stop.

Plaintiff also contends that she followed every command issued by Wasserman, including turning off her car and putting her hands up. Although Defendants argue that the use of force was justified because Plaintiff "reached toward the center console" of the car, a reasonable juror could conclude that any such movement by Plaintiff was merely to undo her seatbelt to comply with Wasserman's command to get out of the car, and that no reasonable officer could construe the movement as a threat to safety.

In short, in reviewing the facts, a reasonable jury could conclude that the Wasserman was not justified in using force on Plaintiff because she had been pulled over for a simple traffic violation and did not engage in any evasive, resistive or dangerous behavior. The Ninth Circuit has held that "[t]raffic violations generally will not support the use of a significant level of force." *Bryan v. MacPherson*, 630 F.3d 805, 828 (9th Cir. 2010).

Furthermore, an officer may be liable for excessive force if he or she handcuffs a suspect in a tight or painful manner and ignores complaints of pain. *See, e.g., Wall v. Cty. of Orange*, 364

11

F.3d 1107, 1112 (9th Cir. 2004) (reversing qualified immunity claim where officer allegedly continued to restrain plaintiff "by handcuffs that hurt and damaged [plaintiff's] wrist," noting that "[i]t is well-established that overly tight handcuffing can constitute excessive force"); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (officer "presented no evidence that would justify handcuffing [plaintiff] so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after [plaintiff] complained of the pain."); *Hupp*, 389 F. Supp. 2d at 1232 (noting that Ninth Circuit has held that excessively tight handcuffing can constitute Fourth Amendment violation where plaintiff has been demonstrably injured by handcuffs or complaints about handcuffs being too tight were ignored by officers). Here, Plaintiff testified that she asked the officer who handcuffed her to "please loosen the handcuffs because I was in so much pain." Moujaes Dep. 72:14-19. Plaintiff also testified that after being handcuffed she was crying and "in very severe pain," was "begging them to get me to the hospital," that she told the officers that she was "in a lot of pain," that she thought her shoulder was dislocated, and that she needed a doctor. Moujaes Dep. 75:16- 76:9. Taken in the light most favorable to Plaintiff, a reasonable jury could find that Defendants engaged in excessive force by handcuffing Plaintiff, then ignoring her complaints of pain.

Viewing the evidence in the light most favorable to Plaintiff and drawing all inferences in Plaintiff's favor, a reasonable jury could conclude that Wasserman used excessive force on Plaintiff in violation of her constitutional rights. Summary judgment on this claim is therefore denied.

### b.  Defendants Buckner, Dittmer, and Paul

Defendants move for summary judgment for Buckner, Dittmer and Paul on the grounds that they were not present when Wasserman used force on Plaintiff, and therefore cannot be held liable under the Fourth Amendment for Wasserman's actions. MSJ at 9. Plaintiff contends that each of them may be held liable for Wasserman's use of force because they were all "integral participants." Opp'n at 19-20.

Generally, an officer is only liable for his own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit . . .where masters do not answer for the torts of their servants—

the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").  However, an officer may be liable for conduct where there has been "integral participation . . . in the alleged constitutional violation." *Torres*, 548 F.3d at 1206 (citing *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996)).  "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004).  It does, however, require some fundamental involvement in the conduct that allegedly caused the violation. *Blankenhorn*, 485 F.3d at 481 n.12.  "A person deprives another of a constitutional right within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978)) (internal quotations and alterations omitted).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* (citations omitted).  The Ninth Circuit has rejected the "team effort" standard that allows a jury to consider defendants' conduct together; the proper measure is "to base each individual's liability on his own conduct." *Hopkins v. Bonvicino*, 573 F.3d 752, 769-70 (9th Cir. 2009) (holding that "integral participation" requires "more participation" than where officer interviewed a witness, did not participate in the unconstitutional search, and had conversations with officers who did conduct the search) (citing *Chuman*)); *see also Boyd*, 374 F.3d at 780 (rejecting "team effort" theory "because it allowed liability to attach to 'a mere bystander' who had 'no role in the unlawful conduct.'").

      A law enforcement officer who does not personally apply force may nonetheless be held liable for excessive force where the officer meaningfully participated in the conduct that allegedly caused the violation.  For example, in *Blankenhorn*, the Ninth Circuit found that an officer was not entitled to summary judgment and could be held liable under section 1983 as an integral participant where he arrived during the struggle and held Blankenhorn's left arm so that it could be handcuffed, and in this manner, meaningfully participated in gaining control over plaintiff,

1  culminating in another officer's application of hobble restraints. *Blankenhorn*, 485 F.3d at 481
2  n.3, 12. An officer can also be held liable as an integral participant where he or she had an
3  opportunity to intervene and prevent or curtail the violation (e.g., enough time to observe what
4  was happening and intervene to stop it), but failed to do so. *Sturgis v. Brady*, No. C 08-5363 SBA
5  (PR), 2016 WL 924859, at *8 (N.D. Cal. Mar. 11, 2016) (citing *Robins v. Meecham*, 60 F.3d
6  1436, 1442 (9th Cir. 1995)).

Defendants argue that Buckner, Dittmer, and Paul did not have an opportunity to observe or intervene in Wasserman's quick and decisive use of force in pulling Plaintiff to the ground and handcuffing her.

### i. Buckner

Plaintiff contends that Buckner "was involved with pointing the guns at Ms. Moujaes and her passenger, Cuesta." Opp'n at 19. Defendants argue that although Buckner pointed his gun at Cuesta, she is not a party to this case. There is no evidence that Buckner pointed his gun at Plaintiff.

It is undisputed that at the time of the incident, Buckner was Wasserman's Field Training Officer. A reasonable jury could find that a Field Training Officer's involvement in pointing his gun at Plaintiff's passenger and in making a plan with his trainee Wasserman about how to handle the situation prior to exiting the police vehicle could constitute integral participation in the use of force.

Summary judgment as to Buckner is therefore denied.

### ii. Dittmer

At the hearing, Plaintiff conceded that she does not have a claim against Dittmer. Accordingly, the court grants summary judgment as to Dittmer.

### iii. Paul

Plaintiff argues that Sergeant Paul endorsed the violations by failing to investigate the use of force and signing off on the incident reports. Opp'n at 20. Paul is listed as the "Reviewing Officer" on the incident report. Incident Report [Docket No. 29-9 at ECF 2]. However, the record is otherwise sparse regarding his involvement. Defendants point out that Paul did not arrive at the

scene until after the Plaintiff had been handcuffed. MSJ at 10 (citing Paul Dep. 16:25-17:19).

In her papers, Plaintiff presented no evidence to support her claim that Paul engaged in an excessive use of force or was an "integral participant" in the excessive force incident. *See* Opp'n at 19-20. At the hearing, the court provided an opportunity to cite to supporting record evidence, but Plaintiff was unable to do so. Summary judgment is therefore granted as to Paul.

### c. Qualified Immunity

The Defendant Officers also move for summary judgment on the grounds that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stanton v. Sims,* 134 S.Ct. 3, 4–5 (2013) (per curiam) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 734 (2011) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). The analysis involves two inquiries. First, taken in the light most favorable to plaintiff, the court must ask whether the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If the answer is "no," then the court need not inquire further before ruling that the officer is entitled to qualified immunity. *Id*. If, however, "a violation could be made out on a favorable view of the parties' submissions," the court must examine "whether the [constitutional] right was clearly established."[9] *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (citing *Saucier*, 533 U.S. at 202). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Saucier*, 533 U.S. at 202.

As discussed above, taken in the light most favorable to Plaintiff, a reasonable jury could

---

[9] In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court held that a court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

conclude that Plaintiff posed little or no threat to the Defendant Officers, was not suspected of having committed a serious crime, and was not resisting the officers when they used force on her. Accordingly, a reasonable jury could find that the use of force was not justified under the circumstances. It has long been established that "[f]orce is excessive when it is greater than reasonable under the circumstances," *Santos*, 287 F.3d at 854, and that "where there is no need for force, *any* force used is constitutionally unreasonable." *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001). Therefore, the Defendant Officers are not entitled summary judgment on the issue of qualified immunity.

### B. Claims Against CCSF

Plaintiff brings two claims against CCSF: 1) a section 1983 claim holding CCSF liable on what appears to be a theory of respondeat superior liability for the actions of Wasserman and Buckner, and 2) a claim that CCSF developed and maintained policies and customs exhibiting deliberate indifference to Constitutional rights.

#### 1. Respondeat Superior Claim

Municipal entities have no respondeat superior liability under section 1983; that is, they have no liability under the theory that they are responsible simply because they employ a person who has violated plaintiff's rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, the court grants summary judgment on Plaintiff's claim against CCSF based on a theory of respondeat superior liability for the actions of Wasserman and Buckner.

#### 2. *Monell* Claim

Municipal entities such as CCSF are "persons" subject to liability under 42 U.S.C. section 1983 where official policy or custom causes a constitutional tort. *Monell,* 436 U.S. at 690. CCSF moves to dismiss Plaintiff's municipal liability claim on the grounds that Plaintiff has not offered evidence that her harm was caused by a Department-wide policy or practice of falsely arresting persons, or for using excessive force, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). At the hearing, Plaintiff conceded that she cannot support a *Monell* claim against CCSF. Accordingly, the court grants summary judgment on Plaintiff's *Monell* claim.

## IV. CONCLUSION

For the reasons set forth above, the court grants summary judgment on Plaintiff's unlawful seizure and unlawful arrest claims, and grants summary judgment as to Defendants Dittmer and Paul.  The court also grants summary judgment on Plaintiff's claims against CCSF.

**IT IS SO ORDERED.**

Dated: September 8, 2016

_____
Donna M. Ryu
United States Magistrate Judge