UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYLA MOUJAES,<br><br>    Plaintiff,<br><br>    v.<br><br>SAN FRANCISCO CITY AND COUNTY, et al.,<br><br>    Defendants. | Case No. 15-cv-03129-DMR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REVIEW COSTS**<br><br>Re: Dkt. No. 124 |

Plaintiff Nyla Moujaes ("Plaintiff") moves for review of the $3,517.25 cost bill that was taxed against her following a jury trial in this case. [Docket No. 124]. Defendants Officer David B. Wasserman and Sergeant Gary Buckner ("Defendants") oppose. [Docket No. 126]. The court finds this matter appropriate for resolution without oral argument. *See* Civ. L.R. 7-1(b). Having considered the parties' submissions, the court **GRANTS** Plaintiff's motion and **DECLINES** to award costs for the reasons stated herein.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed this civil rights action alleging that Defendants violated her federal constitutional rights in connection with a traffic stop that took place on July 14, 2013. On that night, Plaintiff was driving in a car with her girlfriend on Mission Street in San Francisco, when she was pulled over Defendants for making an illegal left turn. What occurred during the traffic stop was the subject of much dispute. However, it is undisputed that Plaintiff suffered a dislocated shoulder from the incident that required emergency medical treatment.

Plaintiff brought claims against Defendants and other individual officers pursuant to 42 U.S.C. § 1983 for unlawful seizure, wrongful arrest, and excessive force. Plaintiff also asserted a *Monell* claim for municipal liability against the City and County of San Francisco. The court

granted summary judgment on the claims against the City and County of San Francisco, Plaintiff's unlawful seizure and arrest claims, and claims against certain individual officer defendants, but denied summary judgment on the excessive force claims against Wasserman and Buckner. *See Nyla Moujaes v. San Francisco City & Cty.*, No. 15-CV-03129-DMR, 2016 WL 4702671, at *10 (N.D. Cal. Sept. 8, 2016).

The case proceeded to a week-long trial, during which the parties presented numerous witnesses, experts, and evidence. The jury returned a verdict in favor of Wasserman and Buckner. *See* Jury Verdict [Docket No. 114].

Following the jury's verdict, Defendants filed a timely bill of costs in the amount of $9,922.41. *See* Bill of Costs [Docket No. 120]. Plaintiff objected. *See* Plaintiff's Objections to Bill of Costs [Docket No. 121]. Pursuant to 28 U.S.C. § 1920(3) and Civil Local Rule 54-3, the Clerk disallowed $6,405.16, and reduced the cost bill to $3,517.25. *See* Bill of Costs [Docket No. 123].

Plaintiff now moves this court to review the final cost bill of $3,517.25, and requests that the court decline to award any costs.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Rule 54(d) therefore creates a "presumption for awarding costs to the prevailing party." *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016) (citation and internal quotation marks omitted). However, this "allowance [of costs] to the prevailing party is not . . . a rigid rule." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 283–84 (1946); *see also Ayala v. Pac. Mar. Ass'n*, No. C08-0119 TEH, 2011 WL 6217298, at *1 (N.D. Cal. Dec. 14, 2011) ("In order to overcome the presumption, a losing party must show that to award costs to the prevailing party would be unjust.") (citation omitted). A district court has "discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc). "That discretion is not unlimited." *Id.* "A district court must specify reasons for its refusal to award costs." *Id.* at 592 (citation and internal quotation marks omitted).

2

As explained by the Ninth Circuit, "[a]ppropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247-48 (9th Cir. 2014). This list is not "exhaustive . . . of good reasons for declining to award costs, but rather a starting point for analysis." *Id*. at 1248 (citation and internal quotation marks omitted).

## III. DISCUSSION

Plaintiff argues that the court should decline to award costs because all five factors identified by the Ninth Circuit in *Escriba* support such a result. Defendants oppose, arguing that none of the *Escriba* factors weighs in favor of denying costs in this case. As discussed below, the court finds that at least four of the *Escriba* factors support the denial of a cost award.

### A. The Substantial Importance of the Case

Plaintiff contends that the case addressed issues of substantial public importance, including whether the San Francisco Police Department used excessive force during a traffic stop, and whether officers worked together to minimize evidence of that illegal use of force. Defendants counter that this is a routine excessive force case involving a minor use of force on a drunk driver.

For the purpose of determining whether to deny costs, courts in this district have explained that a case is considered to be of substantial importance "when the claims involved are subject to closer scrutiny or special interest by the court, or the issues raised in the litigation have ramifications beyond the parties and concerns immediately involved in the litigation." *Ayala*, 2011 WL 6217298, at *3; *see also Hunter v. City & Cty. of San Francisco*, No. 11-CV-4911 JSC, 2013 WL 6088409, at *4 (N.D. Cal. Nov. 19, 2013) (citing *Ayala*); *Godoy v. Cty. of Sonoma*, No. 15-cv-00883-WHO, 2016 U.S. Dist. LEXIS 156709, at *8 (N.D. Cal. Nov. 10, 2016) (citing *Ayala*).

This case raised important issues of public concern regarding police conduct in routine

3

traffic stops involving persons of color which culminate in the use of force and injury.[1] *See, e.g.*, *Washburn v. Fagan*, No. C 03-00869 MJJ, 2008 U.S. Dist. LEXIS 13049, at *9 (N.D. Cal. Feb. 11, 2008) (finding the plaintiff's excessive force action presented "important issues regarding how the San Francisco Police Department dealt with, and supervised, excessive force incidents"); *Godoy*, 2016 U.S. Dist. LEXIS 156709, at *8 (finding the plaintiff's unlawful detention and excessive force "raised important issues about police conduct, excessive force, and potential retaliatory activity against police protestors"); *see also Hunter*, 2013 WL 6088409, at *4 (finding plaintiff's excessive force claim was significant and, even though the *Monell* claims were not presented to the jury, the case presented "significant issues with respect to municipal liability based on [the former] Sheriff['s] handling of excessive force complaints and the department's practices with respect to use of force generally").

Accordingly, the court finds that this factor weighs in favor of denying costs.

### B. Closeness and Difficulty of the Issues in the Case

This was a close case. The court denied summary judgment on Plaintiff's excessive force claim due to the presence of genuine disputes of material fact. The case was vigorously litigated by the parties, and the resolution of the issue of whether Defendants used excessive force depended upon the jury's careful evaluation of conflicting witness testimony. *See*, *e.g.*, *Washburn*, 2008 U.S. Dist. LEXIS 13049, at *9 (plaintiff's excessive force case was close as there

---

[1] Plaintiff is a self-described masculine-presenting lesbian of Middle Eastern and South Asian descent. Her passenger, who was her then-partner, is Afro-Cuban. Although Plaintiff did not specifically allege a race or discrimination claim, the issue of race was an underlying theme, as Plaintiff believed that one of the reasons she was pulled over was because she looked like a Hispanic male. Similarly, this case touched on issues regarding police conduct toward gender non-conforming individuals. *See*, *e.g.*, *Jefferson v. City of Fremont*, No. C-12-0926 EMC, 2015 U.S. Dist. LEXIS 34455, at *5 (N.D. Cal. Mar. 19, 2015) (finding plaintiff's civil right action brought to remedy discriminatory treatment in a place of public accommodation "even if brought by a single plaintiff, involves broader protections against racial discrimination" and that such issues were of "substantial public importance"). Although it was not a central theme of the case, during opening statements, Plaintiff's counsel argued that Plaintiff and her partner were perceived as males on the night of the incident. *See* December 13, 2016 Trial Tr. at 26:1-5 [Docket No. 109]. Plaintiff also testified that she believed the police approached her vehicle with their guns drawn because the police "perceived" her in a certain way and "made assumptions" about her based on the way she looked, and the neighborhood she was in. *See* December 20, 2016 Trial Tr. at 162:16-21 [Docket No. 117]. The court and counsel spent considerable time on these issues in voir dire.

was conflicting testimony regarding the defendants' conduct and use of force, and that the "jury's evaluation of the witnesses' competing versions of events turned largely on credibility issues"). Although the jury rendered a verdict in favor of Defendants, this result was far from guaranteed.

Accordingly, the court finds that this reason weighs in favor of denying costs.

### C. Chilling Effect on Future Civil Rights Litigation

In *Stanley v. University of Southern California*, 178 F.3d 1069, 1079-1080 (9th Cir. 1999), the Ninth Circuit held that the district court abused its discretion in failing to consider the "chilling effect of imposing such high costs on future civil rights litigants." The Ninth Circuit explained that the "imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation in this area." *Id*. at 1080; *see also Draper*, 836 F.3d at 1089 (finding that a cost award of $3,018.35 "could chill similar lawsuits challenging Eighth Amendment violations in jails and prisons"); *see also Conservation Cong. v. U.S. Forest Serv.*, No. 14-cv-01979-TEH, 2015 U.S. Dist. LEXIS 109769, at *4 (N.D. Cal. Aug. 19, 2015) (declining to award $4,014.26 in costs because, among other reasons, taxing costs against the plaintiff "may have a chilling effect on future" environmental public interest cases).

The court finds that the imposition of a cost award of $3,517.25 may have a chilling effect on future civil rights litigation. Although the amount of the cost bill is relatively modest (although not minimal, as Defendants contend), Plaintiff's case presented significant issues of public concern as discussed above. To award costs might deter other potential plaintiffs from bringing similarly important civil rights litigation.

Defendants argue that any "chilling effect" was already addressed by the Clerk of Court, who significantly reduced their original cost bill. The fact that the Clerk disallowed improper costs is irrelevant, and should have no bearing on the amount, if any, that Plaintiff should pay. *See*, *e.g.*, *Conservation Cong.*, 2015 WL 4941520, at *2 (declining to award costs as reduced by the Clerk; defendants filed a cost bill for over $11,000.00, which was reduced to $4,014.26 by the Clerk); *Washburn*, 2008 U.S. Dist. LEXIS 13049, at *3 (declining to award costs as reduced by the Clerk; defendants filed a cost bill in the amount of $27,275.05, which was reduced to $16,268.71); *Darensburg v. Metro. Transp. Comm'n*, No. C-05-01597 EDL, 2009 U.S. Dist.

5

LEXIS 71461, at *3-4 (N.D. Cal. Aug. 4, 2009) (declining to award costs as reduced by the Clerk; defendants filed a cost bill in the amount of $179,167.99, which was reduced to $45,747.08).

Accordingly, the court finds that this reason weighs in favor of denying costs.

### D. Plaintiff's Limited Financial Resources

"District courts should consider the financial resources of the plaintiff and the amount of costs in civil rights cases." *Stanley*, 178 F.3d at 1079. "Whether the financial resources in question are of a sufficient level to deny an award of costs can be inferred from the economic circumstances of the plaintiff." *Ayala*, 2011 WL 6217298, at *2 (citation and internal quotation marks omitted).

Plaintiff is a public interest attorney who makes a modest income, particularly when compared to attorneys in private and government positions. *See* Moujaes Decl., ¶ 3 [Docket No. 125-2]. However, the evidence does not demonstrate that Plaintiff is of significantly limited financial means that would justify denying costs for this reason alone.

Accordingly, the court finds that this factor does not weigh in Plaintiff's favor.

### E. Economic Disparity Between the Parties

There exists a "significant economic disparity between Plaintiff and the City and County of San Francisco," the entity seeking to recover costs on Defendants' behalf. *Hunter*, 2013 WL 6088409, at *3 (quoting *Washburn*, 2008 U.S. Dist. LEXIS 13049, at *6); *see also Godoy*, 2016 U.S. Dist. LEXIS 156709, at *8 (finding that the County of Sonoma and its police officers, as "public entities and employees, have significantly more resources" than the minor, indigent plaintiffs) (citing *Hunter*, 2013 WL 6088409, at *8). The City and County of San Francisco is a public entity with vastly greater resources than Plaintiff, who is an individual citizen.

Accordingly, the court finds that this reason weighs in favor of denying costs.

### F. Miscellaneous Factor: Plaintiff's Allegedly Malicious Motive

In their opposition, Defendants argue that the court should consider Plaintiff's allegedly "malicious motive" in bringing this case. According to Defendants, Plaintiff demonstrated such a motive by issuing a pre-trial press release containing inaccurate statements about Buckner's status as a defendant in *Tillotson v. City and County of San Francisco*, refusing to retract the press

1  release, and making a post-trial statement to the press that she knew of the risks associated with
2  her case, but decided to proceed anyway.

As the parties are aware, the court (not Defendants) pointed out the inaccuracy in Plaintiff's press release because the undersigned was the same judge presiding in *Tillotson v. City and County of San Francisco*, 4:15-cv-04014-DMR, in which Buckner was named as a defendant. At the time of the December 2016 trial in this case, the plaintiff in *Tillotson* had stipulated to dismiss Buckner, but the docket did not yet reflect the dismissal. Nevertheless, Plaintiff's representation that Buckner was currently a defendant in *Tillotson* was inaccurate, which is why the court raised this issue. Plaintiff's counsel immediately offered to withdraw the press release and took steps to do so. *See* Medina Decl., ¶¶ 3-4 [Docket No. 127-1]. The fact that articles based on the press release can still be found online is beyond Plaintiff's counsel's control. There is no evidence that Plaintiff's counsel acted maliciously in the dissemination of the press release.

Plaintiff's statement that she decided to proceed with her case with knowledge of the risks she faced certainly is not evidence of a malicious motive. Plaintiff explains that "[t]here was no way, if given the opportunity with legal representation, I would back down from holding police officers accountable for what they did to me and my partner's lives." *See* "*Woman Loses excessive force case against SFPD*" (Ex. B to Sims Decl. [Docket No. 126-3]). This statement is consistent with her trial testimony in which she testified that she brought this lawsuit to hold the police accountable for their conduct. *See* December 15, 2016 Trial Tr. at 199:13-17 [Docket No. 117] ("I filed this lawsuit because I feel that the police should be held accountable for their conduct. We -- especially because they are public servants. We should be able to have faith in our police force, and that faith needs to be restored at this point").

For the foregoing reasons, the court exercises its discretion to deny costs.

## IV. ADMINISTRATIVE MOTION TO SEAL

Plaintiff filed an unopposed administrative motion to seal portions of paragraph 4 of the Moujaes Declaration identifying Plaintiff's net and gross income, monthly expenses, and available income after deduction of monthly expenses. *See* Docket No. 125 at 2.

Civil Local Rule 79-5 provides in relevant part that a party seeking to file a document or

7

portions of it under seal must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law. . . .The request must be narrowly tailored to seek sealing only of sealable material."  Civil L.R. 79-5(b).

For good cause shown, the court grants Plaintiff's unopposed administrative motion to seal.  Plaintiff's request is narrowly tailored to seal only those portions of the Moujaes Declaration disclosing Plaintiff's personal finances.

## V. CONCLUSION

In conclusion, the court grants Plaintiff's motion and declines to award costs.  The court grants Plaintiff's unopposed administrative motion to seal.

**IT IS SO ORDERED.**

Dated: April 28, 2017



_____
Donna M. Ryu
United States Magistrate Judge